## SAMUEL CLAYCOMB

*v.*

## TIMOTHY MOSHIER.

NEW TRIAL—*decree supported by the evidence.* In this case the decree of the court below is regarded as clearly sustained by the evidence.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JAMES W. DAVIDSON, for the plaintiff in error.

Mr. T. G. FROST, for the defendant in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Warren circuit court, to foreclose a mortgage executed by William H. H. Claycomb and wife to Andrew Claycomb, bearing date April 16, 1863, to secure the payment of five thousand six hundred and sixty-five dollars, and assigned by Andrew, by indorsement, to the complainant, Timothy Moshier. Samuel Claycomb was made a party to the bill, claiming an equitable interest in the premises. The premises are described in the mortgage as lot one (1) in block ten (10) in the city of Monmouth.

The mortgage contained this provision: "One thousand nine hundred and fifteen dollars of the above sum is put into this deed on the condition that the said Andrew Claycomb pays a judgment, together with the interest and costs, which William V. Cecil, in the prosecution of a mechanic's lien on the said premises, obtained in the circuit court of Peoria county, and which is to bear interest only from the time the same is tried. If the said judgment is not paid by the said Andrew Claycomb, the said sum of nineteen hundred and fifteen dollars is not to be a part of the consideration of the mortgage, and is to be deducted from the said sum of five thousand six hundred and sixty-five dollars."

This mortgage was acknowledged before Orson Waite, a justice of the peace of Warren county, on the 24th of April, 1863, and recorded on the 30th of January, 1866.

Samuel Claycomb put in his answer to the bill, in which he details the various transactions between him and William and Andrew Claycomb, by which it would appear that Samuel, prior to the date of the mortgage, although the owner of a large amount of real and personal property, was, in 1859, greatly embarrassed in his finances—unable to pay his debts. In that year he conveyed his property, real and personal,

or a large amount of it, by an absolute deed, to his brothers, William and Andrew, on a credit of eight years, they executing their notes at six per cent interest, amounting, in the aggregate, to about twenty-one thousand four hundred dollars, and to secure this sum they, William and Andrew, executed a mortgage on the real estate. The understanding was, that William and Andrew, having the legal title, were to sell the property for the benefit of Samuel, the proceeds of sales to be paid to the creditors of Samuel, and such payments were to be credited by Samuel on their notes which they had executed to him. The arrangement was, in truth, an assignment by Samuel for the benefit of his creditors.

This was the posture of affairs up to the 16th of September, 1863, when Andrew Claycomb was desirous of having a settlement with Samuel of the trust, when the parties had a meeting for that purpose.

Samuel states, in his answer, that the mortgage in question was executed by William to Andrew, he, William, then holding the legal title simply, as a basis of settlement between himself, Samuel and Andrew, but that the parties failed to come to terms, and the mortgage was considered as null and void, and was not then delivered to Andrew. The answer then states that they did, subsequently, in October, 1863, come to an understanding and settlement, and at that time, William executed a mortgage on the lot in question to Andrew to secure the payment of three thousand seven hundred and fifty dollars, as the whole amount due to Andrew, which mortgage was dated back to the 16th of April, 1863, by agreement of the parties, and the same was delivered to Andrew, which he caused to be recorded in the proper office.

Samuel insists that this mortgage was given in lieu of the mortgage for five thousand six hundred and sixty-five dollars, which mortgage, he alleges, Andrew fraudulently obtained from William and placed on record.

Samuel further says, in his answer, that this mortgage for three thousand seven hundred and fifty dollars was executed

and acknowledged in October, 1863, and that the acknowledgment was, by agreement, dated back to the 17th of April, 1863, by W. A. Wood, notary public of Knox county, where William Claycomb resided, and in which county it was executed.

This is the point in controversy: Was this mortgage for three thousand seven hundred and fifty dollars executed subsequent to the one in suit and in lieu of that mortgage? This is to be tested by the proofs in the cause. There is no question of law involved, but simply the fact, which is the real subsisting mortgage? If the mortgage for three thousand seven hundred and fifty dollars is the true one, then it is conceded by appellee the decree is wrong, and should be reversed.

The facts of the case are not very voluminous. These brothers had been for a long time endeavoring to adjust the matters in difference between them, Andrew claiming that he had paid for his brother Samuel a large amount, for which he had no sufficient security, and as early as September 16, 1862, in view of this, a mortgage was executed by William to Andrew, duly acknowledged on that day, for the consideration of six thousand dollars, on the premises in controversy. This mortgage recites that Samuel Claycomb was justly indebted to Andrew Claycomb in the sum of six thousand dollars, and that Andrew was, jointly with Samuel Claycomb and otherwise, liable for debts of Samuel in an amount not then definitely ascertained, but which might amount to one thousand six hundred dollars, and which he was then unable to pay. The mortgage was for the express purpose of saving Andrew from all suits, loss and damage on account of any of the debts of Samuel for which Andrew was in any way liable. It was intended as security and indemnity to Andrew. This mortgage was in the handwriting of James Strain, the attorney of Andrew Claycomb.

When the parties met with a view to a final settlement, this mortgage was presented to Samuel as the basis of the settlement, which he refused to adopt as the basis, saying that

Andrew was the cause of the west half of lot one in block eleven being placed past redemption, and that he would have to take that as part pay in the settlement. The mortgage was not delivered, and matters remained in this position until in April, 1863, when Andrew agreed to take this west half of lot one at two thousand dollars. Samuel still objected, and would not acknowledge more than three thousand seven hundred and fifty dollars to be due. William Claycomb then, for the purpose of effecting a settlement, agreed to pay Andrew two hundred and fifty dollars for Samuel, and a mortgage was executed for the balance—three thousand seven hundred and fifty dollars. This mortgage bears date April 16, 1863, and was acknowledged before W. A. Wood, a notary public of Knox county, on the 17th of the same month.

Andrew Claycomb testified, on the hearing, to these facts, and they were not contradicted by any witness. He states further, that, soon after this mortgage was executed and delivered, an order came from this court remanding the cause of Cecil against Samuel Claycomb for a mechanic's lien on the premises in controversy, which William and Samuel insisted Andrew should discharge. To this Andrew agreed, provided another mortgage should be made, and the amount of that lien inserted as part of the consideration. This lien was admitted to be nineteen hundred and fifteen dollars, without going into a particular scrutiny of the real amount; whereupon the mortgage in suit was executed and acknowledged on the 24th of April, 1863.

These three mortgages, it would seem, were before the parties on their final settlement in October following. The mortgage in suit, and the one for three thousand seven hundred and fifty dollars, were both prepared by Samuel Claycomb's solicitor and counsel, James G. Madden. They bear on their face intrinsic evidence that the last named was executed first, for the real sum Samuel admits he then owed Andrew. It was made in good faith and to secure a debt then amounting

to the sum named in it as the consideration, namely, three thousand seven hundred and fifty dollars.

The mechanic's lien judgment being afterwards brought up, and its payment assumed by Andrew to the extent of nineteen hundred and fifteen dollars, caused the mortgage in suit to be executed, in which is an express provision for the payment of this lien, and if not paid by Andrew, the consideration should be reduced *pro tanto*. These two sums, three thousand seven hundred and fifty dollars, and the mechanic's lien of nineteen hundred and fifteen dollars, make the precise sum of the mortgage in suit. If the mechanic's lien was not discharged by Andrew, the mortgage would be for only three thousand seven hundred and fifty dollars. Andrew discharged this lien, which amounted, with interest and costs, to more than the sum named in the proviso of the mortgage, and that payment established the mortgage in suit as the true mortgage, and shows conclusively that it was the last one executed. Samuel testified that Wood, the notary, dated the acknowledgment back, but he said he was not present at the time of the acknowledgment, and did not know the fact.

The acknowledgment is in regular form, and bears date April 17, 1863.

Other exhibits in the bill presented by Samuel show that this same notary took, on that day, other acknowledgments of deeds from William and Andrew Claycomb to Samuel.

William and Andrew Claycomb were both examined as witnesses, and they do not say the acknowledgment was dated back, and we are not permitted to presume that a public officer would be guilty of such a malfeasance. This fact, and the insertion of the proviso in the last mortgage, being the one in suit, in regard to the mechanic's lien, furnishes a complete answer to the claim of Samuel, and shows that it is wholly unfounded.

It is, however, insisted by Samuel that Andrew took the west half of lot one in block eleven as remuneration for the discharge of the mechanic's lien. This can not be so, for, if

so, why should provision be made for its payment in the mortgage for five thousand six hundred and sixty-five dollars?

These mortgages were executed at the time they bear date, and were acknowledged: the smaller one on the 17th of April, 1863, and the larger one, the one in suit, on the 24th of the same month. In that month a final settlement was attempted, but none was made until the following October, when, on the 24th of that month, it was consummated, and the mortgage for three thousand seven hundred and fifty dollars was delivered to Andrew, clearly by mistake, and he put it on record, and it seems he remained in ignorance of the mistake for several years, and was undeceived by Madden in the manner he states in his testimony.

It is true, Madden denies the statement made by Andrew, but Andrew is corroborated by William. William says he heard a conversation between Madden and Andrew relative to the mortgages—it was at Madden's office. His brother presented the small mortgage to him; he (Madden) said it was not the right one. Madden is contradicted also in another particular, wherein he swears that the mortgage in suit, the large mortgage, was the one first drawn. All the witnesses contradict him in this, except, perhaps, Samuel Claycomb.

Almon Kidder also weakens very much the credibility of Madden. He says he called at his office with Andrew Claycomb on the 16th of April, 1863, and found Madden engaged in drawing a mortgage, which he examined; thought it satisfactory so far as Andrew and William Claycomb were concerned; that mortgage, he thinks, is the one marked Exhibit A, for five thousand six hundred and sixty-five dollars. He further says about that time there had been another mortgage prepared by Madden, which was not satisfactory to Andrew; which mortgage was there at that time, and is, exhibit C (the small mortgage). The only difference in the two mortgages was the mechanic's lien of about nineteen hundred and fifteen dollars. About this time, Kidder says, the parties were trying to make a settlement of matters since 1863, and he went

with Andrew and William, as their attorney, to Madden's office, who was acting as attorney for Samuel. These mortgages were talked of between Andrew, William and himself before Samuel Claycomb came in. Madden then said the mechanic's lien was included in the mortgage agreed to in the settlement, and seemed surprised that the mortgage recorded, and then in the hands of Andrew, did not include that lien, and thought there must be some mistake about it.

There is another circumstance in the case which is wholly unexplained by Samuel, and that is, the execution of the mortgage for six thousand dollars, in September, 1862. A clear and rational account in regard to that is given by Andrew. The reduction of the amount by taking the west half of lot one in block eleven by Andrew at two thousand dollars, and the reduction of the balance to three thousand seven hundred and fifty dollars, by the "donation" of William, for so he calls it, of two hundred and fifty dollars, though William thinks it was only two hundred dollars, presents a consistent and reasonable case, while the claim of Samuel that this half lot was taken to discharge the mechanic's lien, and valued at nineteen hundred and fifteen dollars, is unreasonable, taken in connection with the fact that the smaller mortgage was first executed, and an express stipulation in the larger mortgage by Andrew to pay off this lien.

From the consideration we have been able to give to the proofs in the record, we are satisfied that the theory of Samuel Claycomb, that the mortgage in suit was the first executed and reduced to three thousand seven hundred and fifty dollars, by the agreement of Andrew to take the west half of lot one in block eleven, is not the true theory, but that the true theory is, that the mortgage first executed was the smaller mortgage, and that was raised to the amount now found in the larger mortgage—the mortgage in suit—by the agreement of Andrew to discharge the mechanic's lien, then assumed to be nineteen hundred and fifteen dollars.

It has never been denied that Samuel was indebted to Andrew the amount of the smaller mortgage when it was executed; his after assumption of the mechanic's lien raised the indebtedness to the amount of the mortgage in suit.

As to the fact that Andrew, at the settlement in October, when many papers were in course of delivery to the several parties interested, it is not strange that Andrew should have taken away and put on record a mortgage which did not belong to him, and that William should have taken the one which should have been delivered to Andrew. These parties all confided in each other, and each supposed, when they separated, that each one had the papers to which he was entitled. There was nothing to excite suspicion or inquiry upon the subject, until the occasion spoken of by Andrew at Madden's office, when, producing the smaller mortgage, Madden told him it was not the right one, as it had not in it the mechanic's lien. Up to that time there is every reason to believe Andrew rested in the confident belief he had the larger mortgage, to which he was entitled.

But it is urged, against this view, that Andrew received payments on the mortgage for three thousand seven hundred and fifty dollars from Samuel, and calculated the interest for six months upon it. Exhibit "O" is relied on as proving this, whereas, in fact, it does not. The item is, "S. Claycomb, Dr., for interest to six months interest," carried out, $137.54. On what this interest is calculated, is not shown, except by Samuel's testimony, which may or may not be true, and is susceptible of explanation on the theory that, as no interest was calculated on the amount of the mechanic's lien, and which Andrew had not paid at that time, the parties had in view, alone, the debt due to Andrew, exclusive of this lien.

But it is further urged, that Andrew signed receipts for payments on this mortgage, and they are made exhibits W and X. Exhibit W bears date December 13, 1864, admitted to be in the handwriting of Samuel, and is for the assignment of lease by Whitorack & Co., estimated at four hundred and fifty

dollars per annum, "to be applied on mortgage," without specifying the mortgage.

Up to this time, we are inclined to think Samuel did not know that Andrew had taken the smaller mortgage and placed it on record. Both parties then supposed everything was right. But Samuel did discover, before the next payment was made, which was April 3, 1865, and is "Exhibit X," that the smaller mortgage was the mortgage on record. Samuel wrote this receipt, and, as Andrew testifies, he signed all the receipts without examination or hearing them read by Samuel. If this be so, and we are inclined to believe it, Samuel never read to him the words "being $3750" placed, as the proof shows, some distance from the word "pay," which properly concludes the sentence. We have not a particle of doubt that word, "being," and the figures "$3750," were added after Andrew signed it.

Can it be possible, if such a receipt was read to him "to be applied upon a mortgage that I hold upon lot one in block ten and against W. H. H. Claycomb, which the said S. Claycomb had to pay," and that mortgage then stated to be for $3750 only, that it would not have arrested his attention, he being well assured he had the mortgage for five thousand six hundred and sixty-five dollars? It is scarcely possible, and not at all probable. The whole thing looks like a contrivance.

We have carefully examined all the testimony in this record, and we are satisfied the smaller mortgage was the first executed to secure a debt then existing and not denied, and raised afterwards to five thousand six hundred and sixty-five dollars, by the addition of the mechanic's lien, which Andrew Claycomb assumed to pay, and so provided in the mortgage, and which he did, in fact, pay. The facts are clearly against the plaintiff in error.

The decree is affirmed.

*Decree affirmed.*