Pardridge v. Brady.

---

## Edwin Pardridge et al.

### v.

## Mary Brady.

1. Trespass—Exemplary damages.—In actions of trespass against two or more persons, there can be but one assessment of damages, and it must be for the same amount against all who are found guilty. If a plaintiff in such action makes a case for exemplary damages against one of two defendants, and not against another, he may dismiss as to the latter, and have his recovery against the former.

2. Ratification of trespass.—While a subsequent ratification of a

trespass by one who was not present and did not authorize it, will make him answerable for damages to the extent of the real injury, such ratification does not authorize the infliction of exemplary damages upon him.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed January 4, 1881.

This was an action of trespass, brought by appellee, Mary Brady, against appellants, for breaking and entering her dwelling-house, and taking away household furniture, carpets, etc. Pardridge and Stokes were members of the firm of C. W. and E. Pardridge & Co., merchants, in the city of Chicago. Hurley was the manager of their carpet department, and as such had sold to appellee's husband carpeting on credit, taking his note therefor, secured by a chattel mortgage on the goods purchased, and certain articles of furniture, appellee joining in the mortgage. At the maturity of the note Brady gave a new note, and a new mortgage to secure it upon the same property and some other goods. Mrs. Brady did not join in this mortgage, but at the request of Hurley executed a written waiver of her interest in the property covered by the mortgage. The note secured by this mortgage matured May 3d, 1878, at which time the indebtedness had been reduced to $237.70, for which Brady gave his six notes for $25 each, payable monthly; also one note for $27.70, due in seven months, these notes being secured by a chattel mortgage, not joined in by Mrs. Brady, on the same goods; also a note for $60, secured by a pledge of other property.

In July following, the goods were removed, without the knowledge of the mortgagees, from Bishop Court Hotel, where they were at the time the mortgage was executed, to No. 31 North Ashland avenue, there being then due and unpaid, three of the twenty-five dollar notes, the notes for $27 and $60 not having matured.

The mortgage authorized a seizure and sale of the goods, upon failure to pay any or either of the notes, or in case the goods should be removed without the consent of the mortgagees. Upon learning that the goods had been removed, Hurley gave

Pardridge v. Brady.

the notes and mortgage to Howard, with instructions to foreclose the same by seizure and sale of the goods, if the entire amount of the claim, less a small deduction, was not paid immediately.

Howard, accompanied by several men, went to the house, seized the goods against the protest of Mrs. Brady, disregarding her request for time to send for her husband, as well as her offer, as she testifies, to go with Howard to the bank to get the money with which to pay the claim; took the goods away to a remote and obscure place, where he sold them, the same day, at private sale for $210. It appeared from the evidence that the furniture in the house belonged to appellee.

Appellants pleaded the general issue, and a special plea justifying the taking and sale of the goods under the power contained in the mortgage. On the trial, among the instructions given by the court at the instance of the plaintiff was one in substance, that if the jury believed from the evidence that if before the sale of the goods under the mortgage, the plaintiff tendered to the defendants, the amount of the debt and costs accrued thereon, the defendants after such tender, had no right to sell the goods.

Another instruction, the 12th, was as follows:

"In assessing damages in this suit, if the jury believe from the evidence, that the defendants, or any of them, are guilty, they can allow the plaintiff as damages the value of the goods unlawfully taken by such defendants from the plaintiff, as shown by the evidence, with interest at six per cent. per annum from such taking; and also if you believe from the evidence that such defendants, or some of them, committed the trespasses complained of in a wanton, willful and malicious manner, you may allow said plaintiff exemplary damages as compensation for the injury inflicted upon her, and to punish such defendants who so acted wantonly and willfully for committing said trespasses, and to deter others from like practice."

The jury found all the defendants guilty, and assessed the plaintiff's damages at $500, for which sum the plaintiff had judgment. The defendants bring the case to this court by

appeal and assign various errors, and among them the giving
of plaintiff's instructions.

Mr. FRANK BAKER, for appellants; that an instruction not
based upon evidence in the case is erroneous, cited Alexander
v. Mt. Sterling, 71 Ill. 366; Bradley v. Parks, 83 Ill. 169;
Herrick v. Gary, 83 Ill. 85.

A person ratifying a trespass is liable for actual damages
only: Grund v. Van Vleck, 69 Ill. 478.

Where there are several defendants against whom exemplary
damages are sought, it is error to instruct the jury that they
may take into consideration, the pecuniary condition of each
defendant: Smith v. Wunderlich, 70 Ill. 426; T. W. & W. R. R.
Co. v. Smith, 57 Ill. 517.

Mr. M. J. DUNNE, for appellee; as to exemplary damages,
cited C. R. I. & P. R. R. Co. v. Herring, 57 Ill. 59; C. & N. W.
R. R. Co. v. Chisholm, 79 Ill. 584; Johnson v. Barber, 5 Gilm.
425; Moir v. Hopkins, 16 Ill. 313; Noble v. Cunningham, 74
Ill. 51; I. & St. L. R. R. Co. v. Cobb, 68 Ill. 53.

WILSON, J.   We are compelled to reverse this judgment, but
not without some regret.   A perusal of the testimony has im-
pressed us with the conviction that the power of sale, contained
in the mortgage, was exercised in a harsh, oppressive, and seem-
ingly wanton manner.   Howard and his men entered the house
of which appellee was in quiet possession under a lease, without
her consent, and when asked by her what they wanted, she
was informed by him that he had a mortgage on the furniture
which they had come to take away.   She told him she did not
know that there was a mortgage on anything, and requested
him to wait until she could send for her husband.   He refused,
and with his men pressed on up stairs, and began to take up
the carpets.   She followed him and asked what the amount of
the claim was, and, upon being informed that it was $160,
she told him she would rather pay it than have her things torn
up, and, as she testifies, asked him to go with her to the bank,
to get the money, telling him he might leave the men in the

Pardridge v. Brady.

house until their return.  This he declined to do, and immediately proceeded to remove the furniture, bedsteads, dressing cases, tables, throwing the carpets out of the windows, when appellee began to cry, and again asked him to go with her to get the money.  Paying no heed to her request, and regardless of her distress, he took the goods away, without informing her where they were to be taken to, and sold them the same afternoon, at private sale, for $210, the amount claimed to be due, with an addition of $40 for costs, a sum which it is fairly inferable from the evidence, was much less than their real value, and when on the following day, or the day after, she tendered the $210 for which they had been sold, and asked for their return, she was required as a condition thereto, to execute a release of all causes of action for what had been done.  This she declined to do, and the goods were never returned.

We regard the conduct of Hurley and Howard as unconscionable and oppressive.  The debt had been gradually reduced by payments, and having obtained actual possession of the goods, and the security being thus no longer in jeopardy, common fairness required Howard to give appellee, who, as she swears, was ignorant of the existence of the mortgage, a reasonable time to go for the money with which to pay the claim.

But while we view with disfavor the foreclosure proceedings in question, we are not at liberty to disregard those legal rules which the law has wisely prescribed for the governance of trials in legal tribunals.  The merits of the present case were well nigh smothered in the multiplicity of instructions, there being twelve on the part of the plaintiff and thirteen on the part of the defendant, all of which, with a single exception, were given by the court.  Among those given for the plaintiff were two or three which were erroneous and calculated to mislead the jury.

The plaintiff's eighth instruction was not based on the evidence.  Without stopping to determine whether after default in the payment of a note secured by a chattel mortgage containing a power of sale, a tender before sale of the amount due would have the effect to annul the power of sale, it is enough to say, in the present case, that there was no evidence of any

tender before the sale; on the contrary, the evidence from both sides is that no tender was made until after the goods had been sold. The giving of that instruction was therefore erroneous by reason of the absence of any evidence on which to base it. Alexander v. Mt. Sterling, 71 Ill. 366; Bradley v. Parks, 85 Ill. 169.

The plaintiff's seventh instruction was also faulty, inasmuch as it is uncertain whether the court meant to tell the jury that if the defendants took goods of the plaintiff that were not included in the mortgage, they were liable for such goods only, or were liable for all the goods taken.

The twelfth instruction is, in a certain sense, double, enunciating two propositions, to both of which effect cannot properly be given under the facts of the case. The jury are first told that if they believe from the evidence that the defendants, or any of them are guilty, they can allow the plaintiff as damages the value of the goods unlawfully taken by such defendants. The second proposition is, if the jury also believe from the evidence that some of the defendants committed the trespass complained of in a wanton, willful and malicious manner, the jury might, as to such defendants, allow the plaintiff exemplary damages. In other words, the jury might apply one rule of damages to a portion of the defendants, and another rule to another portion, according as either had, or had not, rendered himself liable for exemplary damages. If such were the rule, it would follow, as a necessary sequence, that the jury might in the same verdict assess one sum against one defendant and a different sum against another. Of course this cannot be done. In actions of trespass against two or more persons there can be but one assessment, and it must be for the same amount against all who are found guilty. If a plaintiff in such action makes a case for exemplary damages against one of two defendants and not against the other, he may dismiss as to the latter, and have his recovery for exemplary damages against the other. The instruction under consideration should have been so modified as to inform the jury that if they found it a proper case for exemplary damages as to some of the defendants, but not as to the others, they could only

assess actual damages for the real injury sustained, against any of the defendants.

The instruction was liable to be misconstrued by the jury in another respect. Having been told in a previous instruction that if they found a trespass had been committed by some of the defendants, which had been subsequently ratified by others of the defendants, the latter were also guilty, the jury would be apt to infer that the defendants thus ratifying the trespass were also liable to exemplary damages, if those who actually committed the trespass were liable to such damages. While a subsequent ratification of a trespass by one who was not present and did not authorize it, will render him amenable to the payment of damages to the extent of the real injury occasioned thereby, the rule seems to be settled in this State that such subsequent ratification does not authorize the infliction of exemplary damages. In Grund v. Van Vleck, 60 Ill. 487, which was very similar in its facts to the case at bar, Mr. Justice Sheldon, who delivered the opinion of the court, says:

" The jury were instructed that they might give exemplary damages. This was erroneous as respects Mrs. Grund and R. P. Blanchard. There is no pretense that they were concerned in the commission of the alleged wrongful acts. The claim for their liability is that they approved and sanctioned the acts after they had been done. The approval of a wrongful act already committed is no subject of punishment. Subsequent approval of a trespass will not affect a third person unless the act is done in his name and for his use, and in that case the liability, as we conceive, is only for the real injury sustained, and not to the extent of vindictive damages." See, also, the opinion of Mr. Justice Story to the same effect, in the case of the Amiable Nancy, 3 Wheaton, 546.

In the present case the acts complained of were done by Howard acting under the direction of Hurley, and without the knowledge of Pardridge or Stokes, who, if liable, are liable only because of their subsequent ratification of the acts complained of.

Numerous cases are found in which our Supreme Court has held that exemplary damages may be awarded against a corpo-

ration for the wrongful acts of its servants and employes while ostensibly discharging duties within the scope of the corporate purposes; but these decisions are not based upon the ground of a subsequent ratification, but upon the principle that as a corporation can act only through its agents, it must be considered to be constructively present, and commanding the act done. St. Louis, Alton & Chi. R. R. Co. v. Dalby, 19 Ill. 353. And that a person openly and notoriously exercising the functions of a particular agency of a corporation will be presumed to have authority from the corporation to so act. Singer M'f'g Co. v. Holdfoot, 86 Ill. 455. The decisions are placed upon the ground of an express authorization of the particular act complained of. The act of the agent is the act of the corporation itself, and in such cases the effect of a subsequent ratification of a previously unauthorized act is not involved.

For the reasons hereinabove given, we are of the opinion that the judgment of the court below must be reversed, and the cause remanded for a new trial.

Reversed and remanded.