## VINGI v. LISIANSKI PACKING CO. et al.

(First Division. Juneau. June 16, 1919.)

No. 1752–A.

Libel and Slander ⬡⟩33, 120(I)—Damages.

    The plaintiff sued the Lisianski Packing Company, its agent, Cann, and Russell, the proprietor of a newspaper, jointly, for damages for libel. At the trial a nonsuit was granted as to the Packing Company. Plaintiff made proper allegations, and claimed both compensatory and punitive damages. The jury returned a verdict for compensatory damages against both Cann and Russell in the sum of $1, and punitive damages against Cann alone in the sum of $800. On motion for a new trial, *held*, first, by finding nominal compensatory damages against both defendants, the jury found the article published was false, and, that being so, the law presumes at least nominal damages, whether malice did or did not exist; second, punitive damages may be awarded by the jury, when only nominal compensatory damages are recovered; and, third, punitive damages may be awarded against one of two joint defendants, where nominal compensatory damages have been awarded against both such joint defendants.

This is a suit against Ed. C. Russell, proprietor and publisher of the Alaska Daily Dispatch, and the Lisianski Packing Company and J. H. Cann, its agent, for damages for a

⬡⟩See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

libel which was alleged to have been published in the Dispatch at the instigation and request of said Packing Company and Cann. The action is against the defendants jointly, and recovery is sought for $1,500 compensatory damages and $1,000 punitive damages. Defendants made separate appearances and filed separate answers.

At the trial a nonsuit was granted as to the Lisianski Packing Company, but there was evidence justifying a jury, if they saw fit, to inflict both kinds of damages as to Cann and Russell.

After having instructed the jury as to actual or compensatory damages, the following instruction on punitive damages was given:

"Now, there is also another kind of damages, called punitive damages, and, if you allow actual damages, you are also authorized to allow punitive damages under some circumstances, according as to whether you do or do not believe certain things. Punitive damages are sometimes called exemplary damages; they are given as smart money, and by way of punishment, and by way of setting an example. In a case of libel they are never given unless there is express malice. Now, in this case, if you find that the publication is libelous, and was false and was made for the purpose of injuring the plaintiff, or with a reckless disregard of the plaintiff's rights, then in addition to the compensatory damages you may award such sum as you think proper, not exceeding $1,000, to be allowed by way of punishment to the defendants; but punitive damages cannot be allowed unless you find that the article is false, and that the defendant did not have reason to believe, and did not in good faith believe, the same to be true."

After the instructions were given, and before the jury retired to deliberate, they propounded to the court the inquiry as to whether or not, in case they found for plaintiff, it would be permissible to find punitive damages against one defendant, and not against the other, to which inquiry the court replied in the affirmative, provided they found compensatory damages against both defendants, to which attorney for Cann objected. The jury then retired, and later returned into court a verdict as follows:

"1. Compensatory damages—$1 against both defendants.
"2. Punitive damages—$800 against J. H. Cann."

Defendant Cann objected to the filing and receipt of the verdict. The defendant Cann has moved for a new trial

as to him. The defendant Russell has filed no motion, and seems to be satisfied with the verdict.

John Rustgard, of Juneau, for plaintiff.

John R. Winn, of Juneau, for defendants Packing Co. and Cann.

Ed. C. Russell in pro. per.

JENNINGS, District Judge. In support of the motion for a new trial three considerations are urged: (1) The verdict is essentially contradictory in this, to wit, by finding only nominal damages the jury find no malice, and by finding punitive damages they find express malice. (2) There can be no punitive damages where only nominal compensatory damages are recovered. (3) There can be no severance of joint tort-feasors. As there are several of these libel suits now pending in this court, I think it proper to set forth my views at some length.

(1) Malice in libel suits:

I do not think the point is well taken. The defendants Cann and Russell each admit publishing the article, but each says it was not libelous, that it was true, and that plaintiff was not damaged. By finding nominal compensatory damages the jury found that the article was false. That being so, the law presumes at least nominal damages, whether malice did or did not exist.

The cause of the confusion on the subject of malice in libel suits is well set out by Judge Gaynor in the case of Prince v. Brooklyn Daily Eagle, 16 Misc. Rep. 187, 37 N. Y. Supp. 251, as follows:

"The cause of the many misunderstandings thereon in these actions (and the reports and text-books are filled with them) arises from the doctrine that two different kinds of malice appertain to such actions. Indictments for libel had to charge that the publication was malicious, for malice was an essential of the crime, and had to be proved. Civil pleaders, fond, as they were, of verbiage, especially attributing bad and wicked motives in actions of tort, needlessly came to plead in the same form; and, from the fact that the allegation of malice was always found in the declaration or complaint, it seems that malice gradually came to be deemed essential to the action. We find judges stating it to be essential, (only casually, at first) at an early period in England, and the same has continued in judicial utterances, though not so often actually decided, down to the present time, but not without able

and discriminating judges and text-writers standing out against it all along. It being said that malice was essential to the action, it was at once found that a bothersome fiction was put in the way, whereupon the lawyers and judges straightway invented and set up another fiction against it, so as to destroy its force, viz. that the malice essential to maintain the action would be presumed in every case. And these two useless fictions, the one laughing at and offsetting the other, have been fostered, and have come down to us, causing controversy, misunderstanding, and confusion all the way. The other malice was, and is usually, called 'actual' in contradistinction to the said 'presumed' or 'implied' fictitious, malice. For this actual malice punitive damages may be given, but not for the said presumed malice. This is the doctrine complete. It is the creation and perpetuation of a distinction out of nothing and for nothing. To say that malice is essential to the action, and then that it will be presumed in every case, though it serves no purpose, as no damage may be given for it, seems so vain and useless that it has never been acquiesced in.

"The judge writing the opinion for our Court of Appeals in a recent case said: 'The publication of a libel is a wrongful act, presumably injurious to those persons to whom it relates, and, in the absence of legal excuse, gives a right of recovery, irrespective of the intent of the defendant who published it; and this although he had reason to believe the statement to be true, and was actuated by an honest or even commendable motive in making the publication.' Holmes v. Jones, 147 N. Y. 59, 41 N. E. 409. * * * The confusion in respect of the meaning of the word 'malice' in actions for libel and slander, involved in trying to distinguish between two kinds of malice, whereas there is and can be in such actions only one kind, seems to be preserved now only because it has existed so long, even though against many protests. The only malice there is in actions for libel or slander, is such as is proved. When such malice exists, punitive damages may be given for it. Evidence in proof or disproof of malice has relation to the question of punitive damages only. It has no relation to the actual damage done to the plaintiff. That cannot be withheld or diminished by the jury for absence of malice. It does not depend upon malice at all. Proof of the publication usually affords evidence of malice. Proof that one published a libel of another carries with it evidence of malice, unless circumstances also appear which show that there was no malice. Malice may be found in the publication itself, or be proved aliunde. In either case it is the same malice, the difference, if any, being in degree. Recklessness or carelessness or disregard of the rights of others in the publication is evidence from which malice may be found. Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701."

See, also, Davis v. Hearst, 160 Cal. 143, 116 Pac. 538, second column, for luminous dissertation along same lines.

Of course, if the complaint alleges express malice and

claims punitive damages therefor, evidence of express malice is admissible in plaintiff's case in chief to substantiate that claim; but such evidence does not "aggravate" compensatory damages, for compensatory damages are not subject to either aggravation or mitigation.

(2) Can punitive damages be awarded where only nominal compensatory damages are recovered?

As to this there are authorities both pro and con. In 17 Corpus Juris, p. 792, notes 23 and 24, some (but by no means, all) of the authorities are listed. It would seem that Kansas, Maine, Texas, Iowa, Michigan, and Wisconsin hold in favor, and Alabama, District of Columbia, Georgia, Illinois, Kentucky, Mississippi, Missouri, New York, North Carolina, and Vermont hold against, the point made. I think the weight of authority, as well as the better reasoning, is against the validity of the point. In Prince v. Brooklyn Daily Eagle, supra, Judge Gaynor says:

"It is said that it would not have been error to have charged the jury that, if they found that the plaintiff was damaged only nominally, they should not give punitive damages. There is authority for this (Stacy v. Publishing Co., 68 Me. 279); but I do not think it is the law of this state. A person may be of such high character that the grossest libel would damage him none; but that would be no reason for withdrawing his case from the wholesome, if not necessary, rule in respect of punitive damages. It is in such cases that the rule illustrates its chief value and necessity."

And in Alabama G. S. R. Co. v. Sellers, 93 Ala. 9, 9 South. 375, 30 Am. St. Rep. 17, the following is said:

"The true theory of exemplary damages is that of punishment. involving the ideas of retribution for willful misconduct, and an example to deter from its repetition. The position of the Supreme Court of Maine can be sustained in principle, it seems to us, only by assuming that which is manifestly untrue, namely, that no act is criminal which does not inflict individual injury capable of being measured and compensated for in money. Many acts denounced as crimes by our statutes, or by the common law, involve no pecuniary injury to the individual against whom they are directed, and which, while the party aggrieved could not recover damages, as compensation beyond a merely nominal sum, are yet punished in the criminal courts, and may also be punished in civil actions by the imposition of 'smart money'; and on the same principle acts readily conceivable which involve malice, willfulness, or wanton and reckless disregard of the rights of others, though not within the calendar of crimes, and inflicting no pecuniary loss or detriment measurable by a money standard on the individual, yet merit such

punishment as the civil courts may inflict by the imposition of exemplary damages. And upon these considerations the law is, and has long been, settled in this state, that the infliction of actual damage is not an essential predicate to the imposition of exemplary damages."

(3) Should judgment be entered on the verdict for punitive damages against one defendant, the jury having found compensatory damages against both defendants and punitive damages against one only?

This is by far the most difficult of the three questions. The case of Cunningham v. Underwood (1902) 116 Fed. 806, 53 C. C. A. 102, is relied on by the movant. The language of the court is as follows:

."That the court erred in permitting such an apportionment of damages, when the plaintiff had elected to sue both defendants in one action is very obvious. Wrongdoers sued together and found guilty in an action for slander or libel, or any other form of tort, are liable for the whole injury to the plaintiff; and the question as to whether one is more culpable than another is of no importance, for each is liable for all the damages, without regard to degrees of guilt. That one may have been actuated by that degree of ill will and evil purpose constituting actual malice does not in any wise justify a division of the damages, so as to throw upon one of two or more tort-feasors sued together a responsibility beyond that cast upon the others, *whether done by way of compensation or punishment*. The common law prevails in Tennessee, where this action was tried, and there are no cases to which our attention has been called which justify the departure from the rule of common law as we have stated it. Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543; Railroad Co. v. Jones, 100 Tenn. 512, 45 S. W. 681; Add. Torts, § 1395. It is plain that the error in the charge, if exception had been taken thereto—which was not the case—could have been corrected, so far as the defendants were concerned, by rendering a judgment only upon the verdict returned against both defendants. If, on the other hand, a motion in arrest of judgment had been made upon the ground that under the pleadings there could be but one judgment, the error could be corrected by setting aside the separate judgment, and suffering the joint judgment to stand."

The facts in that case are on all fours with the facts in the case at bar and the opinion is by a very eminent court, but the force of the opinion as an authority here is much weakened, if not entirely destroyed, by a consideration of two circumstances, to wit: (1) The two cases cited by the opinion do not fully sustain it. (2) It is founded upon the

common law and on a state decision construing that state statute as not having changed the common law.

.The case from the Supreme Court of the United States cited by Justice Lurton in that case was a libel suit, in which all the defendants had joined in a plea of not guilty. Evidence had been admitted (against objection of other defendants) of the financial ability of one of the defendants. This evidence was not followed by an instruction to the jury that they could consider it only as affecting that one defendant and not the others. The verdict was for a lump sum against all the defendants, and there was no statement therein as to how much, if any, was given as punitive damages, and the jury was never "called upon to render a verdict against a sole defendant." The Supreme Court granted a new trial because this evidence as to the financial ability of one of the defendants was not accompanied by the instruction afore-. said, saying:

"In many cases against several defendants it frequently happens that evidence is competent and is admitted as against one of the defendants only, and the court, on its own motion or on the request of the other defendants, would charge the jury that such evidence could not be taken into consideration as against the defendants to whom it did not apply. But here such a power cannot be exercised. The court cannot say to the jury that the evidence of the wealth of the corporation is only received in regard to it and as furnishing a basis for a computation of exemplary damages against it. If received at all it must be received against all the defendants, as but one verdict can be given against all who are found guilty, when in truth in regard to all of them but the corporation it is evidence which is absolutely incompetent. Yet if the evidence is received on the assumption that it is material in relation to the corporation, the other defendants are affected by it the same as the corporation, and a verdict may very probably be enlarged against them because of the evidence as to the ability of the corporation defendant to pay. The jury is thus permitted to take into consideration the wealth of one defendant upon the question of the amount of the verdict against all of them."

And the opinion is limited to a holding that the plaintiff waives "any right to recover punitive damages against all, *founded upon evidence of the ability of one of the several defendants to pay them;*" the court saying:

"As the verdict must be for one sum against all defendants who are guilty, it seems to be plain that when a plaintiff voluntarily joins several parties as defendants, he must be held to thereby waive any

right to recover punitive damages against all, *founded upon evidence of the ability of one of the several defendants to pay them.* This rule does not prevent the recovery of punitive damages in all cases where several defendants are joined. *What the true rule is in such case is not perhaps certain.* 7 Ill. App. 639, 99 Penn. St. 63. But we have no doubt it prevents evidence regarding the wealth of one of the defendants as a foundation for computing or determining the amount of such damages against all." Washington Gaslight Co. v. Lansden 172 U. S. 558, 19 Sup. Ct. 303, 43 L. Ed. 543.

As to the case in 100 Tenn. 512, 45 S. W. 681, cited by Judge Lurton, the court there very manifestly was considering joint and several liability for *compensatory damages* only. There was no reason to consider, and it does not appear that the court had in mind, punitive damages at all. The case cites Currier v. Swann, 63 Me. 325; Ricker v. Freeman, 50 N. H. 420, 9 Am. Rep. 267; Fultz v. Wycoff, 25 Ind. 321; Warren v. Westrup, 44 Minn. 237, 46 N. W. 347, 20 Am. St. Rep. 578; 2 Sedgwick, Dam. (8th Ed.) 431; 1 Sutherland, Dam. § 825. The Maine case is not available for examination, but none of the others aid the defendant in the least; the New Hampshire case is plainly not in point, nor is the Indiana case; the Minnesota case, decided in 1890, was not a case of punitive damages, and the rule in Minnesota as to punitive damages seems to be adverse to defendant's contention. See Nelson v. Halvorsen, decided in 1912, 117 Minn. 255, 135 N. W. 818, Ann. Cas. 1913D, 104. In the citation from Sedgwick the author is not speaking of punitive damages. His views as to punitive damages are set out in 1 Sedgwick, § 382, and seem to be adverse to defendant's contention.

Judge Lurton says:

"The common law prevails in Tennessee, where this action was tried, and there are no cases to which our attention has been called which justified the departure from the rule of common law as we have stated it." Cunningham v. Underwood, supra.

At that very time there was in Tennessee a statute in terms similar, but stronger even than the sections in our Code, to wit, sections 4700–4702, Shannon's Code, but it had been construed by the Tennessee court as not authorizing a separate judgment against a joint tort-feasor (N., C. & St. L. Ry. v. Jones, supra), and Judge Lurton had that decision in mind and cited it.

Now, our Code provides, in section 1067:

"Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves."

Section 1068:

"In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, whenever a several judgment is proper, leaving the action to proceed against the others."

Section 929:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party."

Concerning a statutory provision similar to our section 1067 the Supreme Court of Indiana says:

"That it is immaterial whether the complaint alleges a joint or a joint and several liability; that the right of- recovery is in this respect to be regulated by the proof and not by the allegations of the complaint; that in other words every complaint is in the respects stated to be treated as both joint and several where there are two or more defendants; that the object of the provision obviously is to prevent a plaintiff who proves a good cause of action against part of the defendants, but not against all from being put to the expense and delay of a new action."

And our statute received judicial construction in 1892 by the Oregon Supreme Court in Hamm v. Basche, 22 Or. 513, 30 Pac. 501, which quotes from Ah Lep v. Gong Choy, 13 Or. 205, 9 Pac. 483, as follows:

"The appellant's .counsel seemed to be of the opinion that the judgment could not be upheld as to one of the defendants in an action upon a joint contract, unless it could be as to both. * * * If a plaintiff commenced an action against two or more defendants upon a joint obligation, he was compelled to establish a joint cause of action against all, except when some of the contracting parties were under a disability; but the Code has changed the rule by allowing a judgment to be taken against the party or parties shown to be liable when the others are not liable."

St. Louis & S. W. Ry. Co. v. Thompson, (1908) 102 Tex. 89, 113 S. W. 144, 19 Ann. Cas. 1250; although not a libel case, presents a similar question as is presented here. There the court says (102 Tex. 99, 113 S. W. at page 147):

"The plaintiff may in the discretion of the jury recover exemplary damages against either or all of the said defendants in such sum as the jury may believe should be assessed against the said defendants or either of them. It is not necessary, as in case of *actual damages* recovered, that all of the defendants should be subjected to the same verdict because some of the defendants may have acted without malice, but in combination with others, and as to such defendants there would be no right to recover exemplary damages."

Nelson v. Halvorson (1912) 117 Minn. 255, 135 N. W. 818, Ann. Cas. 1913D, 104, was a suit for a false imprisonment, in which separate answers were filed. The court say:

"From the evidence the jury might have found that the constable made the arrest in good faith, supposing he had a warrant, but immediately released plaintiff upon discovering that the document he acted under was not a warrant. If so, the jury would not be justified in assessing punitive damages against the officer, even if they found that he had not probable ground for believing plaintiff guilty of a felony, while at the same time the jury might find from the evidence that Ness knowingly made use of pretended process to force plaintiff to settle a disputed claim, and that he and his attorney pursued this purpose, after the officer ceased to act; thus warranting the jury in assessing substantial punitive damages against Ness. The difference in financial condition of the two defendants would alone justify the jury in imposing different amounts as punishment upon them, in case the conclusion was reached that both ought to be penalized."

Mauk v. Brundage (1903) 68 Ohio St. 89, 67 N. E. 152, 62 L. R. A. 477, was a libel suit, and the Supreme Court of the state reversed the following instruction:

"To find exemplary or smart money damages you must find that all the defendants against whom you may find a verdict, if you do find a verdict, had actual malice as I have defined it to you."

Davis v. Hearst (1911) 160 Cal. 143, 116 Pac. 530, was a libel suit. The following instruction was disapproved:

"If you find that exemplary damages are justified as against only one of them, you must not add anything at all for exemplary damages,"

—the court saying:

"In contemplation of the new trial which must be ordered it becomes necessary to say that the instruction is mistaken in its law. In an action for compensatory damages against joint tort-feasors (the action contemplated by Civil Code, § 3333), the law will not permit an apportionment of the damages, 'since it will not attempt to

measure the degrees of culpability of the joint tort-feasors; nor in an action for malicious prosecution, where the existence of malice in fact must be found against every tort-feasor, before any judgment can be rendered against him, will the law, for the same reason, admit or permit an apportionment of damages. Also, in those jurisdictions, as in England, where the verdict must be for a single sum, and there is included in it damages, both compensatory and punitive, there can be, from the nature of the practice, but a single verdict against all defendants. But, under our system of procedure where the jury may, and upon the request of the defendant must, segregate and make separate awards of compensatory and punitive damages, the reason for the' rule we have been considering ceases to exist. There is nothing in our system to prevent the award of compensatory damages against all joint tort-feasors who are found culpable, and to add a specific sum or sums, by way of punitive damages, against such of the tort-feasors as the jury shall find to have been actuated by malice in fact. Not only is this permissible, but it tends to simplicity and avoids the multiplicity of actions which otherwise would become necessary. Peculiarly applicable is this principle to cases of punitive damages sought against both principal and agent, where the agent has been guilty of malice, fraud, or oppression, but where, as above pointed out, the improper motive of the agent is not made matter in aggravation against the principal. There is a scarcity of authority upon this proposition, but we think the principle as we have enunciated it is sound."

In the light of our statute and of the great reform sought to be ushered in by the Codes, it would seem that the question turns largely upon the practicability of the severance, having in view always, of course, the consideration that care should be taken that no substantial injustice of material prejudice against any of the parties should result. In Mauk v. Brundage, supra, the court say:

"Perhaps the question is not without difficulty, but it would appear practicable to allow a recovery of an amount against all as compensatory damages and a further amount against some as exemplary damages (and such verdict would be just if the evidence warranted it), and it would not seem impracticable to so shape the verdict as to bring about this result."

And it will be seen from an examination of the opinion in the English case of Greenlands v. Wilmhurst, [1913] 3 K. B. 507, Ann. Cas. 1915B, 290, how, since the Judicature Act, the practice of several judgments against joint tort-feasors has obtained great favor in England. While the Court of King's Bench did not approve of the practice, yet they did not reverse the case on account of the disapproval.

The objections made in Washington Gaslight Company v. Lansden, supra, do not obtain in the case at bar. If Cann could have suffered from any evidence admitted against Russell which was not admissible against him (Cann), and if there were no way of telling how much of the sum awarded by the verdict was for compensatory and how much for punitive damages, and against whom the said amounts were awarded, a different situation might be presented, but I can recall no such improper evidence, and the verdict separates the item where proof of motive plays no part from the item where proof of motive is indispensable, so that the situation presents no complications making it impracticable or unjust to pronounce a judgment in strict accordance with the verdict; that is, joint as to the compensatory and separate as to the punitive damages. Russell is not complaining, and how is the defendant Cann put at a disadvantage? The verdict is responsive to the issues made by his pleadings. There can be no doubt that under our Code plaintiff might have sued only Cann for both compensatory and punitive damages, or, having sued both him and Russell for such damages, have dismissed entirely as to Russell. Does it militate to Cann's disadvantage that plaintiff did not take this course, but, on the contrary, has so acted that Russell also is to pay the compensatory damages? I cannot see any impracticability.

The motions are denied, and judgment awarded according to the verdict.

⊗⟞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes