WILLARD W. PULLEN *vs.* JAMES S. GLIDDEN.

Waldo. Decided December 20, 1878.

*Malicious prosecution. Evidence. Law and fact. Trial. Party as a witness. Exceptions.*

In an action for malicious prosecution it is competent for the defendant to prove, as having some bearing upon the questions of want of probable cause and malice in fact, that prior to the prosecution complained of, it was the common report in the neighborhood of the parties that the plaintiff had committed the crime for which he was prosecuted.

Such common report is not of itself sufficient to show probable cause, but in connection with other criminatory facts or information that came to the knowledge of the defendant before he commenced proceedings, it may tend to show it and to negative malice.

The unexplained neglect of the plaintiff, in a suit for malicious prosecution, to appear or testify at the trial of his case is a matter competent for the consideration of the jury upon the question of want of probable cause.

Either party in such case has a right upon request therefor to a direct and specific ruling as to whether the facts proved or admitted taken together do or do not show a want of probable cause.

But in order to enable the court to determine whether the excepting party was aggrieved by a refusal to give such specific ruling, it must appear by his exceptions that all the vital facts or evidence bearing upon the question are therein stated, or so much of the same as may enable the court to determine that the ruling ought to have been in his favor.

ON EXCEPTIONS.

CASE for malicious prosecution, for an alleged forgery of an order on Eaton Shaw of Portland, state commissioner, for four barrels of rum, in the name of N. G. Bryant, agent of the town of Palermo. The plaintiff, Pullen, after a three days' hearing before a trial justice, was discharged on motion of L. M. Staples, the attorney for the complainant, Glidden, and afterwards brought this action.

The undisputed facts are that Glidden was one of the select-men who had appointed Bryant agent, and gave him an order on Shaw for all the liquors he called for on account of the town; that Shaw received an order under the name of Bryant for four barrels of rum which he directed to Bryant; that he afterwards sent his bill to the selectmen which they showed to Bryant, who denied that he wrote or authorized any one to write such an order; that the selectmen went to Portland, and after conference with Shaw, paid his bill; that they afterwards went to Augusta, and were told by the depot master that he delivered the rum to a man he supposed was Bryant, and afterwards learned was Bryant; that they were also informed by teamsters that Pullen was seen about that time on Augusta bridge with a horse drawing barrels which he called rum, and was afterwards on the same day seen driving in the direction of his home and also of Bryant's; that afterwards they called on Pullen as to who wrote the order, and he declared he knew nothing about it; that subsequently the defendant called on lawyer Staples and told him all the above facts, and was by him advised that the defendant would be justified in commencing a prosecution; that thereafter the defendant made the complaint.

Neither Pullen nor Bryant were present at the trial. There was also evidence tending to prove other facts. The defendant testified that at the time he consulted Staples he exhibited to him the disputed order and another order of like kind known to be genuine, and also a letter for a comparison received from one Foye purporting to be written by Pullen; that he left the letter with the trial justice, and it was afterwards lost. The existence of the letter was denied, and there was evidence both ways.

Witnesses were asked by the plaintiff " do you know what the common report was as to whether Pullen forged the order in question ?" and answered, against the defendant's objection, " I do, and it is thought Pullen did forge the order." The presiding justice, against the plaintiff's objection, permitted the defendant's counsel to comment to the jury upon the fact that the plaintiff was not present to testify at the trial and did not testify in the case.

The attorney for the plaintiff admitted every material fact as stated by the defendant except the existence of the Pullen letter, which he denied, and the presiding justice refused his requested instruction to the jury as matter of law, that if they should find there was no such letter, all the other facts being admitted, there was no probable cause. He also refused the further requested instruction, that if all the facts claimed by the defendant were true there was no probable cause.

The verdict was for the defendant; and the plaintiff alleged exceptions.

*J. W. Knowlton,* for the plaintiff.

*L. M. Staples,* for the defendant.

BARROWS, J. A former verdict for the defendant in this case was set aside and a new trial granted, upon plaintiff's exceptions to an instruction given by the presiding judge, which seemed to require the jury to find that the defendant in prosecuting the plaintiff was actuated by express malice in the popular sense of the term, which is distinguishable from malice in fact in its true legal import. *Pullen* v. *Glidden,* 66 Maine, 202.

The plaintiff now excepts : 1. To the admission, against his objection, of the testimony of several witnesses from the town where the parties lived that it was the common report there that plaintiff committed the crime for which the defendant instituted the prosecution here complained of. 2. To the permission given by the presiding judge to defendant's counsel to comment to the jury upon the fact that the plaintiff was not present at the trial and did not testify in the case, and to the comments made by the judge in his charge upon this and other facts appearing in the case. 3. To the judge's refusal to instruct, upon plaintiff's request, that all the facts in the case as presented by the defendant, including the existence of a certain letter purporting to be signed by the plaintiff (but which was denied by him) did not amount to probable cause for the original prosecution ; and his refusal to instruct that if they should find there was no such letter, all the other facts being admitted to be as claimed by defend-

ant, there was no probable cause, and to his submitting the question of probable cause to the jury.

I. Was the testimony objected to admissible? There was no specific objection to the questions put to the witnesses, as being too indefinite as to the time when or the place where it was commonly reported that the plaintiff was guilty of the crime for which the defendant caused him to be prosecuted. Nor was any objection interposed on the ground that it did not appear that the defendant was informed of these reports, or that they in any way originated with or were put in circulation by him. To make such objections available they should have been specifically stated so as to give the defendant an opportunity to obviate them if they were capable of being obviated. The objection being a general one to the competency of the evidence under any circumstances, the question presented is whether the fact of the existence of such common reports in the town where the parties lived, at a time prior to the prosecution alleged to be malicious, and made known to the prosecutor, though not originating with him, has any legitimate bearing upon the present contention. In distinguishing between hearsay evidence and that which should be deemed original and material, Professor Greenleaf well says: "Thus, where the question is whether the party acted prudently, wisely or in good faith, the information on which he acted whether true or false is original and material evidence. This is often illustrated in actions for malicious prosecution."

In actions of this sort it is necessary to determine whether the defendant instituted the proceedings against the plaintiff without probable cause and maliciously. The propositions are not identical nor absolutely interdependent. It is true that it is competent for the jury to find that the defendant acted maliciously as an inference from the want of probable cause. But the malice necessary to maintain this action is not implied by law from the want of probable cause. It is incumbent upon the plaintiff to prove the existence of malice in fact to the satisfaction of the jury. And, on the other hand, the existence of malice does not establish a want of probable cause. The defendant then is at liberty upon his plea of not guilty to offer any evidence which fairly tends to

show either that there was probable cause for the prosecution which he commenced, or that in what he did he was acting honestly without malice. Does the fact, if it exists, that it was the common report in the town where the parties lived that the plaintiff was guilty of the offense before the defendant, having knowledge thereof, instituted the prosecution, have any bearing upon either of these points ?

We think it was competent upon both, though not perhaps of the highest importance.

That the general bad reputation of the plaintiff may be proved in such an action as this was long ago held in *Rodriguez* v. *Tadmire*, 2 Esp. 721. It is true that in *Newsam* v. *Carr*, 2 Starkie, 69, Wood, B., ruled that the defendant should not be permitted to prove that the plaintiff was a suspicious character, and that his house had been searched on a former occasion, saying that, although such evidence was admissible in slander for the purpose of mitigating damages, such evidence in this case would afford no proof of probable cause to justify the defendant. But, with this case before him, Shaw, C. J., remarks in *Bacon* v. *Towne*, 4 Cush. 217, 240 : " We are inclined to think that evidence of the general bad reputation of the plaintiff should have been admitted, to rebut the proof of want of probable cause as well, as in mitigation of damages. . . The same facts which would raise a strong suspicion in the mind of a cautious and reasonable man, against a person of notoriously bad character for honesty and integrity, would make a slighter impression if they tended to throw a charge of guilt upon a man of good reputation." The remark is quoted approvingly by our own court in *Fitzgibbon* v. *Brown*, 43 Maine, 169, 175. The same doctrine seems to have been held in *Israel* v. *Brooks*, 23 Ill. 575, and *Miller* v. *Brown*, 2 Mo. 127.

The weight of authority is decidedly in favor of the admission of evidence of the plaintiff's general character, and for the reason adverted to in the remarks of Shaw, C. J., above quoted. The discrepancy in the decisions has arisen from a neglect to make the proper discrimination between the issue presented by a plea of not guilty in an action for malicious prosecution and that which

arises on the same plea in actions of libel and slander. The simi-
larity in the injuries complained of in these classes of suits has
led to confusion in the decisions touching the pleadings and the
evidence applicable to them. With something of a general like-
ness there are important differences in the contentions liable to
arise upon a plea of the general issue in suits for malicious prose-
cution and those for slander, verbal or written, and sufficient care
has not always been taken in reporting the cases to designate the
purpose for which the evidence was offered and the state of the
pleadings. For instance, in slander, the speaking of actionable
words raises the implication of malice in law, which is all that is
necessary for the maintenance of the suit, though malice in fact
may be proved to enhance the damage. *True* v. *Plumley*, 36
Maine, 466. *Jellison* v. *Goodwin*, 43 Maine, 287. Hence com-
mon reputation and other evidence not amounting to a justifica-
tion, though tending to negative malice in fact, was not admitted
for that purpose in *Taylor* v. *Robinson*, 29 Maine, 323, though
why it should not be competent upon the question of damages is
perhaps not altogether clear. See *East* v. *Chapman*, 2 Car. &
P. 570.

But as we have already seen, in actions for malicious prosecu-
tion where the question for the jury is whether the defendant,
upon all the information he had, whether it was in fact true or
false, acted as a cautious, reasonable man not influenced by malice
would act, the general reputation of the plaintiff is a proper sub-
ject of inquiry upon the question of probable cause. And, since
malice in fact may be inferred from the want of probable cause,
it follows that it is pertinent also upon the question of malice.

Here, however, the precise question is whether evidence of
common repute in the neighborhood that the plaintiff was guilty
of the particular offense for which he was prosecuted was rightly
received. Judge Redfield, in *Baron* v. *Mason*, 31 Vt. 201, says
emphatically that such evidence ought to be regarded as one
proof, though no sufficient one in itself, of probable cause. We
think he was right. Not only the facts which the defendant knew,
but the information he had received, in fine, the circumstances
under which he acted, even his own consultations with counsel

learned in the law, if he took the advice of such, are competent evidence upon these questions of probable cause and malice in fact. The man who claims an investigation according to law, of the charge he makes against another, stands on a different footing from him who indulges his tongue in slanderous babble which can result in nothing but mischief. This last must make his charges good by establishing their truth. But the first, whose doings may, in some contingencies, be serviceable to the community, is not responsible for his mistakes, if he acts with reasonable caution and an honest purpose. While the prevalence of reports that a man had committed an offense would be no sufficient cause in itself for proceeding against him, it cannot be said that their existence would not lend a force even in the mind of a cautious and candid person to any criminatory facts or information which they would not have as against one whom the neighboring public did not believe to be guilty. It is one of the great possible variety of facts and circumstances that may have a bearing upon the questions whether the defendant was acting "prudently, wisely and in good faith."

II. Another of these facts and circumstances which appears in the present case is that the plaintiff in a suit involving his character, and where necessarily he must have been the person who could best explain his possession of the rum procured on the order alleged to be forged, did not attend at the trial nor offer his testimony as he might have done by deposition.

It is set out as a ground of exception that the judge permitted defendant's counsel to comment upon this, and referred to it as proper for the consideration of the jury in his charge. Herein he did right. Had there been any cause for his non-appearance and failure to testify, such as is now suggested by his counsel in argument, it could have been shown at the trial, and the unfavorable inference obviated. But the fact is one proper for the consideration of the jury even in criminal cases, and in civil cases we do not see a shadow of an objection to it. *State* v. *Bartlett,* 55 Maine, 200. Abundant reasons are assigned for the rule in *State* v. *Cleaves,* 59 Maine, 298, 300, 301. See also for further instances and illustrations, *State* v. *Reed,* 62 Maine, 129. *Blan-*

*chard* v. *Hodgkins, id,* 119. *Robinson* v. *Blen,* 20 Maine, 109.

The motive of the plaintiff in omitting to testify here was as much a matter for the jury as the motive of the party for a like omission in *Taylor* v. *Willans,* 2 Barn. & Adol. 845.

III. A somewhat extended statement of evidence offered and facts proved precedes the plaintiff's request for instructions touching the question of probable cause, but it does not appear that it embraces all the facts proved or admitted or all the evidence. Hence it is impossible for us to say whether the plaintiff was aggrieved by the refusal of the presiding judge to instruct as requested, or by his submitting the question to the jury. Some facts are stated which tend to create a suspicion, at least, that by some collusion between the town's agent for the sale of spirituous liquors and the plaintiff there was some misappropriation of liquors, which the defendant as one of the selectmen of the town might be in duty bound to investigate. It does appear that the town agent denied the making of the order and that the plaintiff had at least a temporary possession of the rum, though he denied all knowlege of it when inquired of by the defendant. And besides the controverted fact of the defendant's possession of a letter written by the plaintiff capable of being used in comparison with the order alleged to be forged, the case seems to show that the defendant acted in the institution of the prosecution under the advice of one who held the responsible position of county attorney in a neighboring county. As this last matter is stated in the exceptions it would seem to have justified an instruction had such been given that if the defendant, with an honest wish to ascertain whether the facts and evidence in his possession would authorize a prosecution against the plaintiff, made a full and fair statement of them all to the lawyer and solicited his deliberate opinion thereon, and received one favorable to the prosecution, and thereupon commenced it in good faith, it would suffice in the absence of anything decisive to the contrary to show probable cause, and would be fatal to the plaintiff's suit. *Ravenga* v. *Macintosh,* 2 Barn. & Cress. 693. *Stone* v. *Swift,* 4 Pick. 389. *Wilder* v. *Holden,* 24 Pick. 8. *Stevens* v. *Fassett,* 27 Maine, 266. If any one was liable to be aggrieved by the want of more specific instruc-

tions on the question of probable cause, it was apparently the defendant.

Moreover, it is obvious that the plaintiff did not really admit the condition of things which the defendant claimed. The exceptions show that the defendant was claiming and arguing, against the plaintiff's objection, that the non-production by the plaintiff of his own testimony and that of Bryant the agent who had denied the giving of the order, was caused by a consciousness on the part of the plaintiff that they could not testify without showing probable cause ; whether this was the real motive or not was a question for the jury. In *Taylor* v. *Willans, ubi supra,* the finding of the jury, as to the motive of the original defendant in not appearing to give testimony upon the hearing of the complaint he had instituted, was made by the judge's instructions the vital one upon which the question of probable cause was to turn. It is certainly true, as observed by Walton, J., in *Humphries* v. *Parker,* 52 Maine, 502, that the parties in a suit of this description upon request therefor " are entitled to a direct and specific instruction from the presiding judge as to whether the alleged facts set up in defense, if proved, did or did not show a want of probable cause." But in making their requests they must see to it that they cover the vital points upon which the question depends. Where the requests are couched, as in the present case, in general terms, in order to show that the excepting party has been aggrieved, all the facts or evidence embraced in the request must be stated ; and in any case enough should be laid before the full court to enable them to say what the rulings ought to have been in view of all the matters that were of importance in the decision of the question. We have no such foundation in the present case to base a conclusion upon. We see nothing in the case as stated in the exceptions that would justify us in sending it back for a third trial.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.