Omar L. Rosenkrans *et al.*

*v.*

Alleston E. Barker.

*Filed at Ottawa November 14, 1885.*

1. Exemplary damages—*in suit for malicious prosecution—as against one who did not aid in initiating the prosecution.* A and B were partners carrying on business in this State, the former residing in another State, the business being principally conducted by C, the husband of B. C procured the arrest of a debtor of the firm, who had been inveigled into the State,

under a writ of *ne exeat.* The bill in the *ne exeat* suit was dismissed, and C prosecuted an appeal from the order of dismissal. A knew nothing of the suit until after its dismissal and the appeal had been taken, and never ordered, advised or directed the arrest, but on learning the facts condemned the action of C, and had the appeal dismissed: *Held,* that an instruction in an action for false imprisonment and malicious prosecution, brought by the debtor, authorizing the finding of exemplary damages, was erroneous as to A. And *held, also,* even if he had approved of the arrest upon learning what had been done, that he would have been liable only for the real damages sustained by the plaintiff, and not for vindictive damages.

2. PARTNERSHIP—*agency of each partner as respects the others.* By entering into partnership, each partner reposes confidence in the other, and constitutes him his general agent as to all partnership concerns.

3. SAME—*liability of one partner for tort of another.* As a general rule one partner is not liable for the willful tort of a co-partner. So if one partner, without the knowledge or consent of the other, maliciously procures the arrest and imprisonment of a debtor of the firm, and such act fails to be of any benefit to the firm, the partner not participating in the unlawful act and deriving no benefit therefrom, will not be liable for the arrest and imprisonment.

5. MALICIOUS PROSECUTION—*evidence of plaintiff's character or reputation.* In an action for malicious prosecution, the defendant may prove the general bad reputation of the plaintiff at the place where he resided at the time of his arrest, for honesty and fair dealing in business, to rebut the proof of want of probable cause, and also in mitigation of damages.

5. INSTRUCTION—*not based on the evidence, calculated to mislead.* An instruction which is not based on the evidence in the case is improper, and should not be given, as it is liable to mislead the jury. So where a resident partner had a debtor of his firm arrested on a writ of *ne exeat,* without the knowledge or approval of his co-partner residing abroad at the time, and the latter, on learning the facts, disapproved of the arrest and the further prosecution of the *ne exeat* suit, it was *held,* that an instruction as to the liability of the co-partner, based on the theory of his approval and ratification of the arrest, was erroneous and misleading.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellant Rosenkrans:

A partner who does not authorize or consent to a wrongful act can not be held liable unless the firm received a benefit

from such act. *Grund* v. *Van Vleck*, 69 Ill. 478; *Gilbert* v. *Emmons*, 42 id. 143.; *Petrie* v. *Lamont*, 1 Car. & Marsh. 93; Collyer on Partnership, sec. 457; 1 Lindley on Partnership, bk. 1, chap. 1, sec. 4; *Durant* v. *Rogers*, 71 Ill. 121.

Rosenkrans never approved or sanctioned the *ne exeat* proceedings after the suit was brought, nor derived any benefit from it, and hence is not liable. A partner who does not join in the perpetration of a wrongful act can not be held liable for vindictive damages. *Grund* v. *Van Vleck*, 69 Ill. 478.

The advice of counsel learned in the law, will protect parties from a suit for malicious prosecution, in case the facts be fairly and honestly disclosed. *Lowenthal* v. *Strong*, 90 Ill. 74.

Messrs. Shuman & Defrees, for the appellant Weber:

The discharge of an accused person is not a sufficient ground for a malicious prosecution suit, as showing a want of probable cause. *Israel* v. *Brooks*, 23 Ill. 578.

Probable cause is a mixed question of law and fact. *Israel* v. *Brooks*, 23 Ill. 578; *Jacks* v. *Stimpson*, 13 Ill. 703.

What facts, and whether particular facts, constitute probable cause, is a question exclusively for the court. *Sutton* v. *Johnstone*, 1 T. R. 493; *Panton* v. *Williams*, 2 Q. B. 169; *Stone* v. *Crooker*, 24 Pick. 81; *Kidder* v. *Parkhurst*, 3 Allen, 393; *Ash* v. *Marlow*, 20 Ohio, 119; *Stewart* v. *Sonneborn*, 98 U. S. 187; *Speck* v. *Judson*, 63 Me. 207; *Grant* v. *Moore*, 29 Cal. 644; *Thale* v. *Krekeler*, 81 N. Y. 428; *Cole* v. *Curtis*, 16 Minn. 182.

Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence with which he is charged. *Richey* v. *McBean*, 17 Ill. 65; *Munns* v. *Dupont*, 3 Washb. C. C. 31; *Foshay* v. *Ferguson*, 2 Denio, 617; *Hurd* v. *Shaw*, 20 Ill. 356.

The defendant may prove the general bad reputation of the plaintiff, both to rebut the want of probable cause, and in mitigation of damages. 3 Sutherland on Damages, 708; *Bacon* v. *Towne*, 4 Cush. 240; 2 Greenleaf on Evidence, sec. 458; *Wood* v. *United States*, 16 Pet. 366; *Fitzgibbon* v. *Brown*, 43 Me. 169; *Blizzard* v. *Hays*, 46 Ind. 166; *Oliver* v. *Pate*, 43 Ind. 132; *Scott* v. *Fletcher*, 1 Overt. 488; *Express Co.* v. *Patterson*, 73 Ind. 430; *Pullen* v. *Glidden*, 68 Me. 563.

Messrs. Abbott, Oliver & Showalter, for the appellee:

Proof of a person's reputation should be limited to the community in which he resides. The witness should live in, or be acquainted in, that community before being allowed to testify as to the party's reputation.

The *status* of Rosenkrans as an instigator of the arrest, may be referred to either of two theories:

*First*—The perpetrators were servants or agents of Rosenkrans, acting within the scope of their agency or employment. Weber had the general management of the business; Johnson was subject to his direction. Storck & Shuman were the attorneys of the house, and the purpose was to make a claim due to the house.

*Second*—The wrongful proceeding was planned and instituted for Rosenkrans, and in his name, and when the same came to his knowledge he ratified what had been done, and continued the said proceeding for six or eight months longer.

The action goes against Rosenkrans upon either of these theories; and in either case the subsequent approval, being evidence of personal malice, makes him liable to the extent of vindictive damages.

These rules are illustrated by the cases of *Amiable Nancy*, 3 Wheat. 546, 1 Paine, 118, and *Wilson* v. *Tumman*, 6 Man. & G. 236.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action brought by A. E. Barker, in the Superior Court of Cook county, against O. L. Rosenkrans and J. H. Weber, to recover damages for an alleged malicious prosecution and false imprisonment. A trial of the cause before a jury resulted in a verdict and judgment in favor of the plaintiff for $2000. The defendants appealed to the Appellate Court, where the judgment was affirmed.

The facts out of which this litigation grew, so far as is necessary to state them, are substantially as follows: In 1882 Barker resided in Iowa, and was engaged, in a small way, in the jewelry business. In the latter part of the year he bought a bill of goods of Rosenkrans & Weber, of Chicago, amounting to $350. The goods were sold by a traveling man named Johnson. When the bill became due, $100 was paid, but no part of the balance has ever been paid. Rosenkrans resided in Wisconsin, and did business in Milwaukee, but at the same time he was a partner in the jewelry business of Rosenkrans & Weber, in Chicago, the firm being composed of Rosenkrans and Lucy B. Weber, who was the wife of J. H. Weber. J. H. Weber had the general management of the business of this Chicago firm. On or about the first of February, 1883, the bill of goods remaining unpaid, Johnson, who had sold the goods, induced Barker to visit Chicago, under the pretence that he would enter into partnership with him in the jewelry business, in Chicago. Upon the arrival of Barker, Weber was notified, by Johnson, of the arrival, and on the 5th day of February, 1883, Weber filed a petition and obtained an order for a writ of *ne exeat.* The writ was issued, and placed in the hands of the sheriff, who arrested Barker, and held him in custody ten or twelve hours, when he was released on bail. Subsequently, and on the 17th day of March, 1883, on demurrer, the petition was dismissed. It does not appear that Rosenkrans had any knowledge that the proceedings had

been instituted against Barker, until about the first day of April, 1883, and at this time the petition for a *ne exeat* had been held bad on demurrer, and dismissed, and Weber had then, or few days thereafter, appealed to the Appellate Court. When Rosenkrans learned what had been done, he notified Weber that it was wrong, and advised the dismissal of the appeal from the Appellate Court, and under his advice no further steps were taken to prosecute the appeal.

At the request of plaintiff the court instructed the jury:

"If Rosenkrans became acquainted with the facts in the matter about the last of March, 1883, that being so informed as to said facts attending the commencement of said proceeding, said Rosenkrans suffered said proceedings to be continued in the courts, through the medium of an appeal, and did not in any way discountenance said proceedings or put a stop to the same, then the court instructs the jury, that if they find, from the evidence, that said *ne exeat* proceeding was instituted maliciously and without probable cause, and said Rosenkrans was so informed, but allowed the *ne exeat* case to proceed, then all such facts, if the jury so believe, may be taken into consideration in determining whether said Rosenkrans ratified and approved of the arrest of said Barker, and if he did so approve and ratify the arrest of said Barker, then he would be equally liable with Weber, if said arrest was made maliciously and without probable cause."

The court also instructed the jury that if they find the defendants guilty, under the evidence, that the arrest was malicious and without probable cause, and that plaintiff has sustained actual damages, then, in assessing damages, they are not limited to compensation for actual damages sustained, but may give exemplary or vindictive damages. These instructions are claimed to be erroneous as to the defendant Rosenkrans.

An instruction which is not based on the evidence in the case, is improper, and should not be given. It is liable to

mislead the jury, and usually results in a wrong verdict. As to the first instruction, *supra*, we find no evidence in the record upon which it could fairly be predicated. Rosenkrans testified,—and in this he is corroborated by other evidence,—that when he came to Chicago, and learned for the first time of the proceedings, he notified Weber, who was in charge of the matter, that it was wrong, and the appeal ought to be dismissed. Here he not only failed to sanction and approve, but condemned, what had been done, and under his direction no further steps were taken to prosecute the appeal. The conduct and acts of Rosenkrans contain no element of approval, and the instruction, based upon the theory of an approval, in the absence of any evidence to sustain such a theory, could do no less than mislead the jury.

As respects the other instruction, we are of opinion as to Rosenkrans it is erroneous. It is not claimed that he ordered, advised or directed the arrest, or that he even knew of the occurrence until after the proceedings in the *ne exeat* case had been dismissed. The claim is, that after knowledge of the arrest he approved what had been done. If such was the case he would only be liable for the real injury sustained, and not for vindictive damages, as held in *Grund* v. *Van-Vleck*, 69 Ill. 478. But under the instruction the jury were directed that each defendant was liable for actual and vindictive damages.

It is, however, claimed by appellee, that Rosenkrans is liable upon either one of two grounds: First, because those who caused the arrest were servants or agents of Rosenkrans, acting within the scope of their agency; and second, the wrongful proceeding was instituted for Rosenkrans, and in his name, and when he became aware of what had been done he ratified it. Weber, who caused the arrest of Barker, was not, in fact, a partner of Rosenkrans, but he acted for his wife, who was the partner, and so far as the acts are concerned, they may be regarded as the acts of Rosenkrans' partner. In many

respects one partner is the agent of the other. In the pur-
chase and sale of goods within the scope of the partnership
business, the acts of one may be regarded as the acts of both.
In such cases the one that transacts the business, acts for
himself and in the capacity as agent of the other, and in that
capacity he binds himself and also binds his partner. By
entering into partnership, each party reposes confidence in
the other, and constitutes him his general agent as to all
partnership concerns. (Gow on Partnership, 52.) But the
question involved here is not as to the liability of one part-
ner for the contracts of the other, but it is whether one part-
ner may be liable in damages for the wrongs of the other.
Mr. Collyer, in his work on Partnership, section 457, says:
"A learned writer observes, that though partners are, in gen-
eral, bound by the contracts, they are not answerable for the
wrongs of each other. In general, acts or omissions in the
course of the partnership trade or business, in violation of
law, will only implicate those who are guilty of them." And
in 1 Lindley on Partnership, bk. 2, chap. 1, sec. 4, the author
says: "As a rule, however, the willful tort of one partner
is not imputable to the firm. For example, if one partner
maliciously prosecutes a person for stealing partnership prop-
erty, the firm is not answerable unless all the members are,
in fact, privy to the malicious prosecution." In *Gilbert* v.
*Emmons*, 42 Ill. 143, where a question arose as to the liability
of one partner for the act of the other in causing the arrest
of a person charged with larceny of money belonging to the
firm, it was held that the mere knowledge and consent of
one partner that the other should have the person accused
arrested, would not render the partner so knowing and con-
senting, liable to an action for malicious prosecution. It
was necessary that the consent should be of such a character
as to amount to advice and coöperation. In *Grund* v. *Van-
Vleck*, 69 Ill. 478, a question arose as to the liability of one
partner for the tort of the other, and it was held that one

partner can not involve another in a trespass unless in the ordinary course of their business, and in a case where the trespass is in the nature of a taking which is available to the partnership; and in such case, to render the partner liable who did not join in the commission of the trespass, he must afterwards have concurred, and received the benefit of it. Here no part of the debt was collected by the commencement or prosecution of the proceedings against Barker, and it is not claimed that a liability exists on account of receiving any benefit from the arrest, and if Rosenkrans is to be held liable, it is upon the ground that he was a member of the firm which instituted the suit and caused the arrest. This, under the authorities cited, can not be done.

As to the second ground relied upon by appellee,—ratification,—what was said in passing upon the instructions given for appellee is sufficient to dispose of that matter, and no further discussion of the subject is deemed necessary.

One question has been raised in regard to the admission of evidence, which remains to be considered. On the trial the defendants, as preliminary to proving the general bad reputation of the plaintiff in the place where he resided, asked a witness the following question: "Do you know the general reputation of the plaintiff, Mr. Barker, among his friends and neighbors and acquaintances, in the city of McGregor, Iowa, as it existed in December and January and February, 1882 and 1883, for honesty and fair dealing in business?"—which was objected to, objection sustained, and exception taken by defendants. We think that evidence of the general bad reputation of the plaintiff was admissible. In 3 Sutherland on Damages, p. 708, it is said: "According to the better authorities, the defendant may prove the general bad reputation of the plaintiff, both to rebut the proof of want of probable cause and in mitigation of damages." In *Israel* v. *Brooks*, 23 Ill. 575, an action for a malicious prosecution, it was held that previous good character may be shown as one evidence of

want of probable cause, and bad character may be shown as a reason for probable cause. Several questions had been propounded to the witness which were not proper, but if the witness knew the general reputation of the plaintiff in the place where he resided at the time of the arrest, we think it was proper evidence for the consideration of the jury, to rebut the proof of want of probable cause, and also in mitigation of damages. *Bacon* v. *Tinne*, 4 Cush. 240; *Pullen* v. *Glidden*, 68 Me. 563.

For the errors indicated, the judgment of the Appellate Court will be reversed, and the cause remanded to the Superior Court for further proceedings consistent with this opinion.

*Judgment reversed.*