## David A. Titcomb, Impleaded with Elbridge S. Pratt, v. Lydia James.

1. PARTNERS—*Liability of One for the Torts of the Other—Vindictive Damages.*—Partners are, in respect to the business in which they are engaged, agents for each other, and one may be liable for the tortious acts of his copartner done in the usual course of business of the firm; but all members of a partnership are not liable to be punished with vindictive damages for the wanton acts of one partner, although done in prosecution of the business of the firm.

2. SAME—*Extent of the Agency of a Partner—Torts.*—The agency of one partner for his copartners extends to forwarding the interests of the firm in the ordinary and usual manner, and does not extend to the doing of wanton, malicious or cruel acts, when such is not the ordinary or usual course employed by the firm.

3. SAME—*Not Liable for the Torts of Each Other.*—Partners are, in general, bound by the contracts of each other, when made in the scope of the firm business, but they are not generally answerable for the wrongs of each other. In general, acts or omissions in the course of the partnership, trade or business, in violation of law, will implicate those only who are guilty of them. A willful tort of one partner is not in and by force of the partnership alone imputable to the firm.

4. SAME—*Liable, When Prior to the Trespass.*—Where a firm held a chattel mortgage upon the goods of a person who was in default, the firm had the right to take possession of the mortgaged property if it could be done in a peaceable manner, but one member of the firm is not

Titcomb v. James.

answerable for the torts or trespasses of another in taking possession of the property, committed without his knowledge or consent.

5. TRIALS—*Improper Conduct of the Judge.*—Remarks of the presiding judge upon the trial of a cause, to a party, in effect that his own witnesses had sworn against him, and that he might be able to impeach them, were highly prejudicial to such party.

Memorandum.—Trespass. Appeal from the Superior Court of Cook County; the Hon. JAMES GOGGIN, Judge, presiding. Submitted at the October term, 1894. Reversed and remanded. Opinion filed January 10, 1895.

## STATEMENT OF THE CASE.

The defendant in error purchased of the plaintiffs in error certain goods, upon the monthly installment plan, and executed her notes, secured by chattel mortgage on the goods, for the deferred payments. The defendant in error paid the notes until some time in September, 1891; about the 7th of October she returned from a hospital. In the meantime several of the notes became due. The collector for Titcomb & Pratt, on said 7th day of October, called on Mrs. James to collect the money. Mrs. James called his attention to the alleged inferior quality of certain curtains and a folding bed, delivered to her by Titcomb & Pratt, and included in the bill of goods purchased from them, and insisted that the inferior goods be taken away and replaced with goods of the quality which she had purchased. The collector replied that he thought that Titcomb & Pratt would do as she requested, and promised to report the fact to the house; immediately upon receiving this report Mr. Titcomb sent Mr. Brewerton and another man, both employes and servants of Titcomb & Pratt, to the home of Mrs. James, with the mortgages, with instructions to go to Mrs. James and get the furniture.

On calling at the house, Mr. Brewerton told Mrs. James that he was sent over after those goods and that he wished her to pay the notes which were past due.

The testimony of the defendant in error, Mrs. James, as to what the account is, is as follows: She then said to them, " You can not take all of the furniture; I am paying

on the furniture and only want you to make good what is not good." To which she testifies they replied that they had come for all the furniture and were going to take it. She replied, " If Mr. Pratt was here he would not allow it." Mr. Brewerton said, " Why don't you get Mr. Pratt over here ? " and said he would telephone for Mr. Pratt; and he went to the telephone and came back and told me that Pratt was coming; and then Pratt came and stepped to the parlor door and says to me, " What do you mean by saying that we can not take this furniture from you ? " I said, " Mr. Pratt, I did not say that you could not take the furniture from me, because you have the power to do so if you wish to, but I am ready here to pay for the furniture. I will get the money now." He said, " I don't want your money," and swore at me. I said, " Well, Mr. Pratt, all I can do is to tender the money," and I called two servants out of the basement to see me tender him the money. I said, " Here is $120; take $72, that is due you, out of this." He said he would not do it; that I could go to the hot place with my money; he was going to take the furniture. I said, " Mr. Pratt, it is not right; you have no right to take this furniture from me." He says, " I will show you how we take furniture when we come for it." I said, " I can not help myself and I hope you will not take it until I send for my attorney." He told Mr. Brewerton to bring in the men, and Mr. Brewerton went to the door and there were three wagons with seven to ten men on them. The men came into the house and began to lift up the carpets. Mr. Pratt stepped out of the door and I went to shut him out. I thought if I could shut him out a minute, I could lock the men in until I had time to get a lawyer there. He pushed the door open and struck me on the side of the head with his fist, and I started down the hall and went into the back parlor and there was a bar of iron laying there, folded up, and I picked up the bar of iron and said, " Don't you come near to strike me again." He pursued me and that is how I came to pick up the bar of iron. Mr. Brewerton stepped up to me and struck me between the shoulders with

his fist, and Mr. Pratt grabbed the piece of iron from me and I threw up my arms to protect myself. He struck me on the arm and I tried to pass him and he would not let me. I went through the parlor and he followed me and grabbed me by the dress and threw me against the wall and held me. My servant girl had gone for a policeman. The policeman came and asked Pratt what he was doing. He had hold of me at the time. The policeman said if he did not let go of me he would arrest him. Pratt asked him what authority he had to come in there, and he said he was an officer of the law and that he would show his authority. He asked Mr. Pratt what authority he had, and told him to show his authority. Pratt said, " I will show you nothing of the kind;" and the officer said, " If you have anything to show, and have any authority, let me see it." He said, " Have you shown her a mortgage with her name signed to it ? " He said, " No;" and he says, " You should get the mortgage; show me your authority or I will take you to the station;" and he pulled out the mortgage then, and the policeman asked him if he had shown that to me before, and asked if that was my signature, and he said, no, he had not. The men at that time were locked in a room, and part of them were on the wagons. I had locked four of them in a room until I could get a lawyer, and after the policeman came in I went up and unlocked the door and turned the men out, and they came down and went out to the wagon. The officer said to Mr. Pratt : " You have no right unless you have an officer serve this on her;" and I said to the officer, " I have offered him the money; I have tendered him the money and asked him to leave my furniture here." They were taking furniture that did not come from their house at all; furniture that was not covered by their mortgage; part of it had been moved out on the sidewalk at that time; when my attorney came he arranged and had it brought back inside; two pieces were brought back and some rugs; the purchase price of the furniture was about eight or nine hundred dollars. Some rugs and curtains and some crockery and a couple of four or five dol-

lar wash stands. that did not amount to what I had paid, were left there when they went away. They took the other goods away. I was keeping roomers and boarders and doing dressmaking at that time. After I was injured I was not able to proceed with my business, and have never been able to use my hands very well since. I can not use the shears. I can use my hand, but can't use the shears. I can not lift anything heavy. At that time I was able to earn with what boarders I had and roomers, probably three or four hundred dollars a month, including the dressmaking. I suppose I was able to make three or four hundred dollars a month.

I purchased those goods from Titcomb & Pratt on the installment plan. There was $72 due, and I tendered him $120.

The testimony of the plaintiffs in error (defendants below) as to what occurred after Mr. Pratt arrived at the house of Mrs. James is very different.

During the trial a witness on behalf of the defendants below as to what occurred after the attorney for Mrs. James arrived at her house, testified as follows:

Mr. Bisbee: How was this amount to be paid?

Objected to.

The Court: I think I will sustain the objection to that; the assault or damage to the property or anything that occurred at that time, I will let you prove. To which ruling the defendants excepted.

The Court: I will let you show what the value of the goods was, for the purpose of determining the damage to the personal property, the amount of the goods remaining and those taken away.

Mr. Bisbee: Suppose it should turn out to be a preponderance of evidence that there was no assault?

The Court: Your witnesses swear that there was. To which ruling of the court the defendants by their counsel excepted.

The Court: You may be able to impeach your own witnesses. To which remark the defendants excepted.

THE COURT:   If it should turn out that this property was taken away by force during this scuffle, we will hear the evidence.

WITNESS:   Mrs. James was to pay what was past due, between seventy and eighty dollars; it was to be paid when she signed the papers the next day; the notes were secured by a chattel mortgage; she was to pay them in twelve monthly installments.

MR. BISBEE:   I want to show that Mrs. James was to pay the $430.38 by executing monthly notes, and she was to pay cash the next day and sign the notes and a mortgage for that amount, and I want to show that they were prepared and presented to her for her signature by this witness.

Objected to; objection sustained, to which ruling of the court defendants excepted.

The court at the instance of the plaintiff gave the following instructions:

8.   If the jury believe from the evidence that the defendants in this case by their employes or servants under their direction, forcibly entered said premises without the permission of the plaintiff, and in a wanton, insulting, willful and reckless manner seized and carried away said property, without the permission of the plaintiff, the jury are authorized to find exemplary or punitive damages; that is, such damages as will compensate the plaintiff for any wrong to her, and to punish the defendants.

9.   If you find from the evidence that the defendants assaulted, beat and bruised the plaintiff, you may allow the plaintiff such damages, not exceeding the amount claimed in the declaration, as seems to you to be right and proper under all the facts and circumstances in the evidence.   In estimating the damages for assault and battery, you have a right to consider the bodily and mental pain, if any, endured by plaintiff, and her diminished capacity for labor resulting from defendant's wrongful act, if the evidence shows the circumstances to exist.   You may take into consideration the damages to her person by reason of said assault and the

extent and duration of the same. You may also consider the injuries to her feelings by reason of any insult and indignity inflicted upon her person. It is not necessary to prove by witnesses the amount of damages resulting from personal injuries, but these are to be determined by you from your general knowledge and experience, and from all the evidence and circumstances of the case.

12. If you find from the evidence in this case that defendants, or either of them, were assaulted by the plaintiff, and that when so assaulted, resisted such assault by the plaintiff, and in so doing used no more force than was reasonably necessary to successfully resist such assault, then in that event the defendants are not guilty; but if you find from the evidence that the defendants, or either of them, in resisting such assault, used more force than was reasonably necessary to successfully resist such assault of plaintiff, and by so doing injured the plaintiff, then in that event, though you find the plaintiff first assaulted the plaintiff, you will find the defendants guilty.

13. You are further instructed that assault and battery is where one wrongfully, maliciously, and in a rude, insolent, or angry manner touches, strikes, or beats another with the present ability to do bodily injury.

16. If you find from the evidence that the plaintiff gave a mortgage to the defendants on certain household goods, and that afterward plaintiff was in default as to any one or all of the conditions of said mortgage, and remained so at the time of the acts complained of in this action, then the defendants were entitled to take possession of said goods at the residence of the plaintiff, providing they could do so peaceably; but if they were unable to obtain such possession of said goods peaceably, then the only method by which they could obtain possession legally would be by an action for that purpose. And if you further find that the defendants attempted to take possession of said goods under the circumstances above stated, and in doing so they committed a breach of the peace, then they would be wrongdoers under the law, and if the plaintiff sustained any damages by reason

of the wrong doing at the time, you would be warranted in finding a verdict for the plaintiff, and assessing her damages at such sum as you think proper under all the circumstances, and if you find in addition to the above facts that the defendants acted with malice, or in a wanton manner, then you would be warranted in adding to the plaintiff's actual damages such sum as you think proper by way of exemplary damages.

The jury returned a verdict of $10,000 against the defendants below, upon which there was judgment, and from which judgment they prosecute this writ of error.

Brief for Plaintiff in Error, W. N. Gemmill, Attorney; L. H. Bisbee, of Counsel.

One partner can not involve another in a trespass, unless in the ordinary course of their business, and in a case where the trespass is in the nature of a taking which is available to the partnership, and in such case to render the partner liable who did not join in the commission of the trespass, he must afterward have concurred in and received the benefit of it. Where one partner of a firm, acting as agent for the owner of a building, committed a trespass in expelling the tenant and removing his goods from the premises, it was held that the other partner, who took no part in the act and knew nothing of it at the time, and neither advised nor directed it, could not be rendered liable on the mere ground of his subsequent approval. Taylor v. Jones, 42 N. H. 25; Grund v. Van Vlick, 69 Ill. 478.

There is no legal presumption that one partner concurs in the wrongful acts of another, and he is not liable therefor, unless these acts were done within the proper scope and business of the partnership, or were authorized and adopted by the other partner.

Although partners are in general bound by their contract, yet they are not answerable for the wrongs of each other. In general, acts or omissions in the course of a partnership, trade or business, in violation of law, will only implicate

those who are guilty of them. Collyer on Partnerships, Sec. 457; 1 Lindley on Partnership, Chap. 1, Sec. 4.

If a servant commits a tort in his master's service, in excess of his employment or agency, his master is liable for compensatory damages; but when the servant steps outside of his regular duty, and wantonly commits a trespass, the master is not liable for exemplary damages. Sutherland on Damages, 877.

When only one of two or more joint wrongdoers acted in such a way as to render himself liable to exemplary damages, the plaintiff may have judgment against him for exemplary damages, and against the other for compensatory damages. 1 Sedgwick on Damages, 539.

BRIEF OF DEFENDANT IN ERROR, ALLEN, PAYNE & BLAKE, ATTORNEYS.

Mortgagee of chattels has no right to forcibly take possession.

The law does not recognize the right of the owner of property in the wrongful possession of another to oust the wrongdoer forcibly. For so doing he is liable in damages for any injury done to the person or property of the wrongdoer. 3 Blackstone's Com. 4; Comstock v. Brosseau, 65 Ill. 39; Whistler v. Roberts, 19 Ill. 274; Ft. Dearborn Lodge v. Klein, 115 Ill. 197.

The mortgagee must take possession peaceably. Jones on Chattel Mortgages, Sec. 705; 1 Cobby on Chattel Mortgages, Secs. 487, 510.

The only method which the law recognizes for obtaining possession of goods under a chattel mortgage is to make demand, and upon refusal, bring replevin. 2 Cobby on Chattel Mortgages, Sec. 870; McLeod v. James, 105 Mass. 403.

Upon default the mortgagee has no right to obtain possession by force or threats, or against his will, even if the mortgage contains an express provision authorizing him to take possession on default. 2 Cobby on Chattel Mortgages, Sec. 870; Thornton v. Cochran, 51 Ala. 415.

This is especially true where there is a dispute about the

validity of the mortgage and the mortgagor is in peaceable possession. State v. Boynton, 75 Iowa 545.

Partners are jointly and severally liable for the torts of each other committed in the course of the partnership business.

It has been determined by the courts of this country as well as those of England, that the tort of one partner in the course of the partnership business binds the firm, and in this the text writers generally agree.

1 Lindley on Partnership, 150, citing Pollock on Torts 80, *et seq.*, says: "But a willful tort committed by a partner in the course, and for the purpose of transacting the business of the firm, may make the firm responsible."

Partners, like individuals, are responsible for the negligence of their servants, upon the maxim of *qui facit per alium facit per se*, and if one of the partners acts he is considered, in this instance, as the servant of the rest. Colyer on Partnership, Sec. 457.

Partners are liable *in solido* for the tort of one, if that tort were committed by him as a partner, and in the course of the business of the firm. All partners are liable for the torts of an agent, although the agent was appointed by one partner only, provided he had the authority to make the appointment. Parsons on Partnership, 157, 163; Loomis v. Barker, 69 Ill. 360; Durant v. Rogers, 87 Ill. 508; Willy v. Stewart, 122 Ill. 548.

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The only connection which the defendant, Titcomb, seems to have had with this affair is, that as one of the firm of Titcomb & Pratt, he was interested in the sale of the goods, and in the mortgage and notes given therefor; and being informed by the collector of the firm that Mrs. James complained that some of the goods sold to her were of an inferior quality, and that she insisted such inferior goods should be taken away and be replaced with goods of the quality she claimed to have purchased, he told one of the employes

of the firm, Mr. Brewerton, to go to Mrs. James and get the furniture, at the same time giving to him the chattel mortgages thereon.

While it is true that partners are, in respect to the business in which they are engaged, agents for each other, and, therefore, one partner may be liable for the tortious acts of another done in the usual course of business of the firm, yet it is not the case that all the members of the partnership are liable to be punished with vindictive damages for the wanton acts of one partner, although done in prosecution of the business of the firm.

The agency of a partner extends to forwarding the interests of the firm in the ordinary and usual manner, and does not extend to the doing of wanton, malicious or cruel acts, when such is not the ordinary or usual course employed by the firm.

Under the chattel mortgage given by Mrs. James, default having been made in the payment of the note secured thereby, the plaintiffs in error had the right to take possession of the mortgaged goods, if they could do so in a peaceable manner, and neither the partnership relations existing between Mr. Titcomb and Mr. Pratt, nor the directions given by Mr. Titcomb to Mr. Brewerton to go and get the furniture, are, under the evidence presented by this record, to be construed as an authority from him to commit a breach of the peace, or to assault and beat Mrs. James with their fists or otherwise.

Mr. Brewerton certainly seems not to have understood that he had any such authority from Mr. Titcomb, as after arriving at the house, at the request of Mrs. James, before proceeding to take possession of any of the mortgaged property, he sent for Mr. Pratt, and waited until his arrival before taking any further action.

It is argued that what Mr. Pratt and Mr. Brewerton did was by them done in an attempt to get possession of the furniture, as it is said Mr. Titcomb had directed, but as we have before said, Mr. Titcomb's directions, proper in themselves and entirely in accordance with his lawful rights, are

not, under the evidence here presented, to be construed as a direction or authorization to commit a breach of the peace in order to carry out his desires.

Surely it will not be contended that if either Mr. Brewerton or Mr. Pratt had, in order to get possession of this furniture, murdered Mrs. James, that Mr. Titcomb could have been held, upon the evidence here adduced, guilty as an accessory before the fact to such crime.

It is also urged that as a portion of the goods were taken away, and as the plaintiff below testified that there was no settlement under which this was done, and that a part of the goods so taken away had never been returned, that therefore the defendant below, Titcomb, must be held to have approved of all that was done in getting the goods, since a portion of them were retained. If this were the case, still the defendant, Titcomb, would not be liable for vindictive damage, but only for the real damage done by the taking away of such goods as were not returned.

As a rule, partners are in general bound by the contracts of each other when made in the scope of the firm business, but they are not generally answerable for the wrongs of each other. In general, acts or omissions in the course of the partnership trade or business, in violation of law, will implicate those only who are guilty of them, and a willful tort of one partner is not in and by force of the partnership alone, imputable to the firm.

If one partner maliciously prosecutes a person for stealing partnership property, the other members of the firm are not answerable unless they are in fact privy to the malicious prosecution. Colyer on Partnership, Sec. 457; Lindley on Partnership, Book 2d, Chap. 1, Sec. 4; Gilbert v. Emmons, 42 Ill. 145; Grund v. VanVleck, 69 Ill. 478; Rosecrans et al. v. Barker, 115 Ill. 331; Becker v. DePree, 75 Ill. 167; Partridge v. Brady, 7 Ill. App. 639; Sutherland on Damages, Vol. 1, page 76, and also Vol. 1, page 877; Sedgwick on Damages, Vol. 1, page 539; Wilson et al. v. Turnman, 6 Mann. & Grang. 236.

Here, according to the testimony of Mrs. James, both Mr. Pratt and Mr. Brewerton made wanton and malicious

assaults upon her, which it is not shown that Mr. Titcomb either directed, approved, or had any knowledge of until the bringing of this suit.

Mr. Pratt and Mr. Brewerton deny having made any such assault. Admitting, however, that in this respect they do not tell the truth, and that the plaintiff below is to be believed, it is manifest that what they did in this regard was not done in the interests of the firm of Mr. Titcomb or by direction of either, but for their own wanton and wicked purposes.

The plaintiff below also testified that she tendered to Mr. Pratt in money more than enough to satisfy all claim which the firm had upon the goods. After this Mr. Brewerton and Mr. Pratt assaulted her. Mr. Titcomb's only interest in the goods was through a lien which the firm had thereon to secure what was due to it. If, therefore, Mr. Pratt, when the amount due the firm was tendered to him, instead of taking it, as Mr. Titcomb's, as well as the firm's interest required, refused to do so, and, as Mrs. James testifies, after making a wanton and willful assault upon her, carried away a portion of the goods, Mr. Pratt in so doing was neither prosecuting the business of the firm nor acting in the interest of Mr. Titcomb, or doing anything that by virtue of the partnership he had either authority or was an agent to do in the prosecution of the firm business.

The instructions of the court authorizing the finding of punitory damages against the defendants below ought not to have been given.

The remarks of the court to the effect that the witnesses for the defendants below had testified that an assault was made upon Mrs. James were highly prejudicial to the defendants below. An examination of the record does not show that the witnesses for the defendants below did more than, in connection with the testimony of the plaintiff, to testify to that from which an inference might be drawn that they did not deny that an assault was made upon the plaintiff.

The judgment of the Superior Court is reversed and the cause remanded.